IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JERMAINE COLEMAN,** <br> **Petitioner,** <br><br> v. <br><br> **UNITED STATES OF AMERICA, and WARDEN, FDC-PHILADELPHIA,** <br> **Respondents.** | **CIVIL ACTION** <br><br><br><br> **NO. 20-1769** |

**DuBois, J.**                                                                                               **April 30, 2020**

**M E M O R A N D U M**

### I.      INTRODUCTION

Petitioner Jermaine Coleman was sentenced to 78 months imprisonment after pleading guilty to three counts of bank robbery in violation of 18 U.S.C. § 2113(a).  On April 3, 2020, petitioner filed a Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241, asserting that the Federal Bureau of Prisons ("BOP") had incorrectly calculated his credit for time served and, alternatively, requesting that the Court modify his sentence.  Petitioner's § 2241 Petition is denied.

### II.     BACKGROUND

Petitioner was arrested on March 20, 2013 on state bank robbery charges.  Pet. 2.  At the time of his arrest, petitioner was on state parole after having been convicted in 2002 of criminal conspiracy to commit robbery, false imprisonment, and possessing an instrument of crime.  *See* Gov.'s Letter dated Sept. 23, 2019 Ex. A at 2-3.  Two months later, on May 8, 2013, the Pennsylvania Board of Probation and Parole ("PBPP") revoked petitioner's parole on the ground that he changed his residence without permission and recommitted him as a technical parole violator.  Pet. Ex. B.  In the May 8, 2013 order, the PBPP sentenced petitioner to six months imprisonment for that parole violation and stated that he would be "reparoled automatically

without further action of the Board on 09/20/2013, pending resolution of [Coleman's] outstanding criminal charges." *Id.*  In referring to "[Coleman's] outstanding criminal charges" in the order dated May 8, 2013, the Court concludes that the PBPP was addressing both the then-pending state criminal charges and a second parole violation for committing the bank robberies while on parole.  The PBPP specified in the order that the maximum sentence for any parole violation would expire on September 11, 2015.  *Id.*[1]

On July 11, 2013, petitioner was indicted in this Court on three counts of bank robbery, 18 U.S.C. § 2113(a).  The state bank robbery charges against him were dismissed on July 23, 2013, and on that date petitioner was transferred to federal custody pursuant to a writ of habeas corpus *ad prosequendum*.  *See* Ct. Mem. dated Nov. 5, 2015 at 2, *United States v. Coleman*, No. 15-cr-543 (Doc. No. 61).

After having been transferred to federal custody and pleading guilty to the federal indictment on August 21, 2014, defendant was returned to state custody on February 26, 2015, pursuant to FDC Philadelphia's policy of housing convicted federal prisoners awaiting sentence 90 days or more in the future at the state's George W. Hill Correctional Facility.  At the George W. Hill Correctional Facility, petitioner was inadvertently placed in state prisoner housing, instead of federal housing at that facility, and transferred to SCI Graterford.  On April 22, 2015, this Court issued a writ of habeas corpus ordering that petitioner be transferred back to federal custody.

Thereafter petitioner filed a motion based on the Interstate Agreement on Detainers Act ("IADA").  Due to a violation of the anti-shuttling provision of the IADA, the federal indictment

---

[1] Subsequent PBPP records listed the maximum date as September 4, 2015 and the PBPP credited petitioner for time served until that date. Resp. Ex. B Attach. 4.  Consequently, the BOP granted petitioner prior custody credit beginning on September 5, 2015 through February 20, 2018.  *See* Gov.'s Letter dated Sept. 23, 2019 Ex. A at 4-5.

was dismissed without prejudice on November 5, 2015.  *See id.* at 1.  On November 17, 2015, petitioner was re-indicted on the charges contained in the first indictment.  *See* Indictment, *United States v. Coleman*, No. 15-cr-543 (Doc. No. 1).

On December 28, 2015, petitioner filed a motion to dismiss the second indictment on the ground that it violated the Double Jeopardy Clause.  This Court denied that motion on March 3, 2016.  Petitioner continued to litigate the motion through appeal to the Third Circuit and petition for writ of certiorari in the Supreme Court, both of which denied relief.  Petitioner then pled guilty to the second indictment in federal court on December 5, 2017.

This Court imposed a sentence of 78 months imprisonment on January 25, 2018.  On February 21, 2018, petitioner was placed in "custody for return" status by the PBPP, and transferred from federal custody to the Pennsylvania Department of Corrections on May 1, 2018.  Resp. Ex. B Attach. 4; Pet. 4.  On August 15, 2018, the PBPP sentenced petitioner as a convicted parole violator to 10 months and 28 days imprisonment in addition to the "backtime" he had accrued from March 20, 2013 to September 4, 2015.  Resp. Ex. B Attachs. 3, 4.  Petitioner completed his state sentence for the parole violation based on the bank robberies on January 17, 2019, and was transferred to federal custody on January 23, 2019.  Resp. Ex. B Attach. 4; Pet. 4.

On May 24, 2019, the BOP notified the Court that petitioner had requested that his federal sentence be served concurrently with his state parole violation sentence, which could be accomplished by retroactively designating the state institution in which he served his state sentence for service of his federal sentence.  *See* BOP Letter dated May 24, 2019, *United States v. Coleman*, No. 15-cr-543 (Doc. No. 75).  The BOP explained that, depending on whether the sentences ran concurrently or consecutively, petitioner would be released on either June 19, 2021

or March 30, 2022.[2] *Id.* The BOP sought the Court's position on petitioner's request. *Id.*

In response to the BOP's letter, counsel for petitioner argued that the BOP had incorrectly calculated petitioner's sentence and that he should receive additional credit for time served. Pet. 4 n.2. By letter dated September 23, 2019, the Government counsel provided the Court with a letter from the BOP. The BOP explained that petitioner's federal sentence commenced on January 23, 2019, and that it granted petitioner 905 days of prior custody credit against his federal sentence for time served from September 5, 2015 through February 20, 2018, and from January 18, 2019 through January 22, 2019—time in custody that had not been credited against either of his state parole sentences. *See* Gov.'s Letter dated Sept. 23, 2019 Ex. A at 4-5. On December 9, 2019, the Court ordered petitioner and the Government to submit briefs on the issue. *See* Ct. Order dated Dec. 9, 2019, *United States v. Coleman*, No. 15-cr-543 (Doc. No. 74).

Following a hearing on February 27, 2020, and telephone conferences on March, 5, 2020 and March 30, 2020, the Court denied petitioner's request that it direct the BOP to recalculate his sentence. *See* Ct. Order dated Mar. 30, 2020, *United States v. Coleman*, No. 15-cr-543 (Doc. No. 95). The Court explained that issues related to the execution of petitioner's sentence could only be addressed by petition for writ of habeas corpus under 28 U.S.C. § 2241 and that the denial of petitioner's request was without prejudice to his right to file such a petition. *Id.*

The Court then turned back to the May 24, 2019 letter from the BOP on the question whether petitioner's federal sentence should be served concurrently or consecutively to the state parole sentence based on the bank robberies. In response to the BOP inquiry in that letter, by

---

[2] The Government subsequently updated this calculation to account for good conduct time, clarifying that petitioner's projected release dates were either March 19, 2021 or March 12, 2022. Gov.'s Resp. Def.'s Mem. 2 n.1, *United States v. Coleman*, No. 15-cr-543 (Doc. No. 80). This estimate has been further updated in the Government's latest brief, in which it explains that petitioner's current projected release date is April 15, 2021, which reflects "loss of good time credit for a certain period." Resp. 2 n.1.

4

letter dated March 31, 2020, over the Government's objection, the Court recommended that the BOP retroactively designate the state institution in which petitioner served his parole violation sentence based on the bank robberies as the institution for service of petitioner's federal sentence. The effect of that recommendation was to have petitioner's federal sentence run concurrently with the state sentence for parole violation based on the bank robberies. The BOP accepted this recommendation. Resp. Ex. B ¶ 5(h).

Coleman filed his Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 on April 3, 2020. The Government responded on April 16, 2020. The Petition is thus ripe for decision.

### III.  DISCUSSION

Petitioner argues that he should receive prior custody credit against his federal sentence from September 20, 2013—the date at which he contends the state relinquished its primary jurisdiction over him. Pet. 9. Alternatively, petitioner requests that the Court modify his sentence under either Federal Rule of Criminal Procedure 36 or 18 U.S.C. § 3582(c)(1)(A)(i) to "allow for [his] immediate release." *Id.* at 15. The Government responds that petitioner has failed to exhaust his administrative remedies, that the BOP correctly calculated his sentence, and that there is no basis to modify petitioner's sentence under either Rule 36 or 18 U.S.C. § 3582(c)(1)(A)(i). The Court will address each argument in turn.

#### A. Exhaustion of Administrative Remedies

The Government argues that the petition must be dismissed because petitioner has failed to exhaust his administrative remedies. Resp. 3. The Court disagrees.

"Federal prisoners are ordinarily required to exhaust administrative remedies before filing a § 2241 petition." *Gross v. Warden, USP Canaan*, 720 F. App'x 94, 97-98 (3d Cir. 2017)

(citing *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996)).[3]  However, "[t]he administrative exhaustion requirement may be excused if an attempt to obtain relief would be futile or where the purposes of exhaustion would not be served." *Id.* at 98; *see also Fraley v. U.S. Bureau of Prisons*, 1 F.3d 924, 925 (9th Cir. 1993) (excusing failure to exhaust where the BOP Regional Director "would almost certainly have denied [petitioner's] request" in light of BOP policy).

The BOP has participated in the attempted resolution of this dispute over the execution of petitioner's sentence since May 24, 2019.  The BOP's counsel has articulated the agency's position throughout this process.  On September 23, 2019, the Government provided this Court with a letter from the BOP's deputy regional counsel, Joyce Horikawa, which thoroughly explained the BOP's position on the calculation of petitioner's sentence.  *See* Gov.'s Letter dated Sept. 23, 2019, Ex. A.  On March 26, 2020, the Court was provided with a letter from senior CLC attorney Alisha Gallagher, which reiterated that position and explained it in detail.  *See* Gov.'s Letter dated Mar. 26, 2020, Ex. A.  The Court thus concludes that, considering the BOP's consistent statement of its fully considered position that petitioner's sentence was properly computed, the administrative exhaustion requirement is excused as futile in this case.

### B. BOP's Calculation of Petitioner's Sentence

"The authority to calculate a federal prisoner's period of incarceration for a federal sentence imposed and to provide credit for time served is delegated to the Attorney General, who acts through the BOP." *Nieves v. Scism*, 527 F. App'x 139, 140 (3d Cir. 2013) (citing *United*

---

[3] The administrative remedies for an inmate filing a § 2241 petition are detailed in 28 C.F.R. § 542.10 *et seq*.  After first attempting informal resolution of his complaint with prison staff, he may file a formal complaint with the Warden within 20 days of the complaint arising.  28 C.F.R. § 542.13-14.  If the inmate is not satisfied with the Warden's response, he may appeal to the Regional Director.  28 C.F.R. § 542.15.  The "final administrative appeal" is to the General Counsel.  *Id.*

*States v. Wilson*, 503 U.S. 329, 334-35 (1992)). "In calculating the sentence, the BOP determines (1) when the federal sentence commenced, and (2) whether there are any credits to which the prisoner may be entitled." *Id.* at 140-41 (citing 18 U.S.C. § 3585). Prior custody credit is governed by 18 U.S.C. § 3585(b), which provides that a "defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . . that has not been credited against another sentence."

The primary custody doctrine provides that "the first sovereign to arrest the defendant is entitled to have the defendant serve that sovereign's sentence before one imposed by another sovereign." *Taccetta v. Fed. Bureau of Prisons*, 606 F. App'x 661, 663 (3d Cir. 2015). "A sovereign can 'relinquish' primary custody by releasing the defendant on bail, dismissing the charges, or granting parole." *Id.* However, the "temporary transfer of a prisoner pursuant to a writ *ad prosequendum* does not constitute a relinquishment." *Id.*

In its May 8, 2013 decision, the PBPP stated that petitioner would be "reparoled automatically without further action of the Board on 09/20/2013, pending resolution of [Coleman's] outstanding criminal charges." Pet. Ex. B. Petitioner argues that the only "outstanding criminal charges" on May 8, 2013 were the state bank robbery charges, which were subsequently withdrawn in July of 2013. Pet. 10-11. Petitioner thus contends that these charges were "resolved" and he was reparoled on September 20, 2013—transforming the federal jurisdiction from secondary to primary on that date. Pet. 11. The Court disagrees.

The Court concludes that the "outstanding criminal charges" to which the PBPP referred in the order dated May 8, 2013, included both the state bank robbery charges and the potential parole violation for committing the bank robberies while on parole. Accordingly, because petitioner's parole violation for the bank robberies was outstanding as of September 20, 2013,

petitioner was not automatically reparoled on that date. Petitioner himself previously acknowledged that the parole violation for the bank robbery charges was pending since his arrest by state authorities on March 20, 2013. Specifically, during the August 21, 2014 change of plea hearing in this Court, petitioner's counsel requested that petitioner be returned to state custody to resolve his pending parole violation because he had "been sitting now for 17 months on a state parole detainer." *See* Ct. Mem. dated Nov. 5, 2015 at 3, *United States v. Coleman*, No. 15-cr-543 (Doc. No. 61).[4] Petitioner's parole violation remained pending until he was sentenced by this Court and recommitted by the PBPP on August 15, 2018. The state therefore did not relinquish its primary custody over petitioner until after his parole violation term was satisfied on January 23, 2019, when he was transferred to federal custody.[5]

This interpretation is consistent with the PBPP's sentencing following its August 15, 2018 decision. In its September 18, 2018 Order to Recommit, the PBPP credited petitioner for time served from the date of his arrest through September 4, 2015—the original maximum date of his parole violation sentence. Resp. Ex. B. Attach. 4.[6] In doing so, the PBPP determined that petitioner was earning time against his second parole violation as of September 21, 2013 and was

---

[4] Petitioner has provided the Court with a warrant issued February 21, 2018 to return petitioner to state custody for adjudication of his outstanding parole violation for committing the bank robberies while on parole. Def.'s Mem. Ex. B, *United States v. Coleman*, No. 15-cr-543 (Doc. No. 79). Petitioner thus argues that the request made during the August 21, 2014 hearing was merely made in anticipation of a future detainer. Regardless of whether a state detainer had actually been issued as of August 2014, the statement made during the hearing demonstrates that petitioner was aware that the parole violation was pending since his arrest by state authorities on March 20, 2013.
[5] Contrary to petitioner's argument, this interpretation is consistent with this Court's IADA ruling. In that opinion, this Court concluded in part that, because petitioner was serving a term of imprisonment at the time the original federal detainer was lodged in July of 2013, the IADA applied to him. *See* Ct. Mem. dated Nov. 5, 2015 at 8, *United States v. Coleman*, No. 15-cr-543 (Doc. No. 61). The Court held that "the critical time for IADA purposes is the time when the detainer is originally lodged." *Id.* at 8. Petitioner's parole status as of September 20, 2013 was not at issue. When the Court stated that petitioner's "state sentence of imprisonment for violation of parole expired on September 20, 2013," it referred only to the parole violation based on petitioner's change of residence without permission. In the opinion the Court also acknowledged that "the 'max date' on the original state conviction" did not expire until two years later. *Id.* at 3, 8. Moreover, the Court noted that petitioner had requested a return to state custody to resolve the pending parole violation based on the bank robberies. *Id.* at 3.
[6] This Court originally stated, during the February 27, 2020 hearing, that petitioner's federal sentence should run from September 20, 2013. However, the Court's opinion changed after review of these additional materials provided by the BOP prior to the March 30, 2020 telephone conference.

not reparoled as of that date.  To make that clear, the PBPP modified its May 8, 2013 decision by "deleting the reparole portion."  Resp. Ex. B. Attach. 3.  As a consequence, pursuant to 18 U.S.C. § 3585(b), the BOP did not give petitioner credit for time served from September 21, 2013 through September 4, 2015 and from February 21, 2018 through January 17, 2019 because that time was credited against his sentence for the second parole violation.

The Court thus concludes that the BOP correctly determined that petitioner's federal sentence commenced on January 25, 2018,[7] and correctly calculated petitioner's prior custody credit pursuant to 18 U.S.C. § 3585(b).

### C. Modification of Petitioner's Sentence

Petitioner alternatively requests that the Court modify his sentence to "allow for [his] immediate release."  Pet. 15.  Petitioner contends that "the BOP's implementation of Mr. Coleman's sentence has fully undermined the Court's intent at sentencing" and argues that the Court may exercise its authority under either 18 U.S.C § 3582(c)(1)(A)(i) or Federal Rule of Criminal Procedure 36.  *Id.* at 15-16.  The Court disagrees.  Modification of petitioner's sentence under either 18 U.S.C § 3582(c)(1)(A)(i) or Rule 36 is improper.

Rule 36 allows for correction of a "clerical error in a judgment, order, or other part of the record."  Fed. R. Crim. P. 36.  The Third Circuit has stated that Rule 36 is "limited to the correction of *clerical* errors in the judgment" and "provides no basis to correct substantive errors in the sentence."  *United States v. Bennett*, 423 F.3d 271, 277-78 (3d Cir. 2005).  "Rule 36 is normally used to correct a written judgment of sentence to conform to the oral sentence

---

[7] Because the BOP accepted this Court's recommendation to run petitioner's federal sentence concurrent to his second state parole violation sentence, petitioner is now deemed to have commenced his federal sentence on January 25, 2018—the day he was sentenced by this Court—rather than the January 23, 2019 date used in the BOP's original computation.  Resp. 9 n.5.  However, this does not change the fact that petitioner remained in the primary custody of the state until January 23, 2019, when he was received into federal custody following completion of his state parole violation sentence.

pronounced by the judge." *Id.* at 278.  In this case, petitioner contends that the Court should modify the sentence to conform with its "intention" that petitioner's time in federal custody be "not very lengthy." Pet. 16.  The Court's statement at sentencing that "the time [Coleman] will have to spend in custody from this point forward is not very lengthy" was based on incomplete information regarding the resolution of petitioner's parole violation.  Resp. Ex. C at 80:23-25.  The Court expressly refused to rule on the issue of petitioner's credit for time served but pointed out that the credit petitioner received for time served since his arrest depended on whether or not his time was "spent on a [state] parole violation." *Id.* at 80:6-22.  Accordingly, there is no clerical error in the judgment to correct.  Thus, relief is not available under Rule 36.

Under 18 U.S.C § 3582(c)(1)(A)(i), criminal defendants may request compassionate release for "extraordinary and compelling reasons."  "Extraordinary and compelling reasons" were previously defined by a policy statement in Section 1B1.13 of the United States Sentencing Guidelines, which cited the medical condition, age, and family circumstances of the defendant along with "other reasons" as determined by the BOP.  U.S.S.G. § 1B1.13 cmt. n.1(A)-(D).  However, courts have concluded that this policy statement is outdated since the passage of the First Step Act and is thus no longer binding. *See United States v. Rodriguez*, No. 03-cr-00271, 2020 WL 1627331, at *4 (E.D. Pa. April 1, 2020).  Nonetheless, the "old policy statement provides helpful guidance" for courts applying § 3582(c)(1)(A)(i). *United States v. Beck*, No. 13-cr-186, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019).  In this case, petitioner has failed to offer any extraordinary and compelling reasons for his immediate release.  Rather, petitioner merely contends that "he has been confined far longer that the Court intended." Pet. 16.  That extended confinement results from the sentence for petitioner's parole violation for the bank robberies at issue in this case.  The statement the Court made at sentencing regarding petitioner's

anticipated release date was based on the fact that counsel provided incomplete information regarding the sentence for the parole violation based on the bank robberies.  Accordingly, the Court concludes that extraordinary and compelling reasons do not warrant a reduction in petitioner's sentence under 18 U.S.C § 3582(c)(1)(A)(i).

### IV.   CONCLUSION

For the foregoing reasons, petitioner Jermaine Coleman's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 is denied.

An appropriate order follows.