# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JERMAINE COLEMAN,**<br>           **Petitioner,**<br><br>           v.<br><br>**UNITED STATES OF AMERICA, and**<br>**WARDEN, FDC-PHILADELPHIA,**<br>           **Respondents.** | **CIVIL ACTION**<br><br><br><br>**NO. 20-1769** |

**DuBois, J.**                                                                                                                    **July 22, 2020**

## M E M O R A N D U M

### I.   INTRODUCTION

Petitioner, Jermaine Coleman, was sentenced to 78 months imprisonment after pleading guilty to three counts of bank robbery in violation of 18 U.S.C. § 2113(a).  On April 3, 2020, petitioner filed a Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241, asserting that the Federal Bureau of Prisons ("BOP") incorrectly calculated his credit for time served and alternatively, requesting that the Court modify his sentence.  By Memorandum and Order dated April 30, 2020, the Court denied petitioner's § 2241 Petition.  *See Coleman v. United States*, No. 20-1769, 2020 WL 2079406, at *1 (E.D. Pa. April 30, 2020).

Presently before the Court is petitioner's Motion for Reconsideration.  For the reasons that follow, the Court grants petitioner's Motion.

### II.   BACKGROUND

The background of this case is set forth in the Court's April 30, 2020 Memorandum and will be recited only as necessary to address petitioner's Motion for Reconsideration.

Petitioner, Jermaine Coleman, was arrested on March 20, 2013 on state bank robbery charges.  *Coleman*, 2020 WL 2079406 at *1.  At the time of his arrest, petitioner was on state parole after having been convicted in 2002 of criminal conspiracy to commit robbery, false

imprisonment, and possessing an instrument of crime.  *Id.*  On March 20, 2013, the Pennsylvania Board of Probation and Parole ("PBPP") lodged a warrant against petitioner based on his arrest for the bank robberies and related crimes on that date.  Mot. Recons. Ex. B.  On May 8, 2013, the PBPP revoked petitioner's parole on the ground that he changed his residence without permission and sentenced petitioner to six months imprisonment, stating that he would be "reparoled automatically without further action of the Board on 09/20/2013, pending resolution of [Coleman's] outstanding criminal charges."  § 2241 Pet. Ex. B.  In the May 8, 2013 order, the PBPP also stated that the maximum sentence for any parole violation would expire on September 11, 2015.  *Id.*  Newly-produced evidence establishes that the initial warrant lodged by the PBPP on March 20, 2013 against petitioner was lifted on September 4, 2015.  Mot. Recons. Ex. B.

On July 11, 2013, petitioner was indicted in this Court on three counts of bank robbery, 18 U.S.C. § 2113(a).  *Coleman*, 2020 WL 2079406 at *1.  The state bank robbery charges against him were dismissed on July 23, 2013, and petitioner was transferred to federal custody pursuant to a writ of habeas corpus *ad prosequendum* on that date.  *Id.*  Petitioner pled guilty to the federal indictment on December 5, 2017.  *Id.* at *2.  This Court imposed a sentence of, *inter alia*, 78 months imprisonment on January 25, 2018.  *Id.*

On February 21, 2018, after petitioner's conviction in this Court, the PBPP lodged a second warrant against petitioner.  Mot. Recons. Ex. B.  He was transferred from federal custody to the Pennsylvania Department of Corrections on May 1, 2018, *Coleman*, 2020 WL 2079406 at *2.  On August 15, 2018, the PBPP sentenced petitioner as a convicted parole violator to 10 months and 28 days imprisonment in addition to the "backtime" he had accrued from March 20, 2013 to September 4, 2015.  *Id.*  The PBPP stated that the sentence was to be served "concurrently."  Resp. § 2241 Pet. Ex. B Attach. 3.  As discussed *infra*, the Court concludes that

the PBPP intended its August 15, 2018 sentence to be served concurrently with petitioner's federal sentence. Petitioner completed his state sentence for the parole violation based on the bank robberies on January 17, 2019, and was transferred to federal custody on January 23, 2019. *Coleman*, 2020 WL 2079406 at *2.

In calculating petitioner's federal sentence, the BOP determined that the sentence commenced on January 23, 2019 and granted petitioner 905 days of prior custody credit against his federal sentence for time served from September 5, 2015 through February 20, 2018, and from January 18, 2019 through January 22, 2019—time in custody that had not been credited against either of his state parole sentences. *Id.*[1] On April 3, 2020, petitioner filed a Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241. In his § 2241 Petition, petitioner argued that the BOP had incorrectly calculated his credit for time served and that he should receive prior custody credit against his federal sentence from September 20, 2013—the date on which he contended the state relinquished its primary jurisdiction over him.[2] In particular, petitioner cited the May 8, 2013 order of the PBPP, in which the PBPP stated that he would be "reparoled automatically without further action of the Board on 09/20/2013, pending resolution of [Coleman's] outstanding criminal charges." § 2241 Pet. Ex. B.

In its April 30, 2020 Memorandum, the Court concluded that, in referring to "[Coleman's] outstanding criminal charges" in the order dated May 8, 2013, the PBPP was

---

[1] On May 24, 2019, the BOP notified the Court that petitioner had requested that his federal sentence be served concurrently with his state parole violation sentence, which could be accomplished by retroactively designating the state institution in which he served his state sentence for service of his federal sentence. *Coleman*, 2020 WL 2079406 at *2. The Court recommended that petitioner's request be granted and the BOP accepted the Court's recommendation. *Id.* at *3. As a result, petitioner's federal sentence now effectively commenced on January 25, 2018. Resp. Pet'r's Mot. Recons. 4 n.3.

[2] Alternatively, petitioner requested that the Court modify his sentence under either Federal Rule of Criminal Procedure 36 or 18 U.S.C. § 3582(c)(1)(A)(i) to "allow for [his] immediate release." § 2241 Pet. 15. In its April 30, 2020 Memorandum, the Court concluded that no relief was available under Rule 36 and that a reduction of petitioner's sentence under 18 U.S.C § 3582(c)(1)(A)(i) was not warranted. Petitioner's Motion for Reconsideration is not based on that part of the Court's prior decision addressing Rule 36 or 18 U.S.C. § 3582(c)(1)(A)(i).

addressing both the then-pending state criminal charges and a second parole violation for committing the bank robberies at issue in this case while on parole. *See Coleman*, 2020 WL 2079406 at *1. Accordingly, because petitioner's parole violation for the bank robberies was outstanding as of September 20, 2013, the Court held that petitioner was not automatically reparoled on that date. *Id.* at *4. Based on the record before it, the Court determined that petitioner's parole violation remained pending until he was sentenced by this Court and recommitted by the PBPP on August 15, 2018, and the state did not relinquish its primary jurisdiction over petitioner until he completed his sentence for the parole violation based on the bank robberies on January 17, 2019 and was transferred to federal custody on January 23, 2019. *Id.*

On June 15, 2020, petitioner filed a Motion for Reconsideration, citing new evidence provided to petitioner by the Government on May 4, 2020—after the Court's April 30, 2020 Memorandum and Order were issued. Mot. Recons. 1, 3. Specifically, petitioner relies on: (1) a recommitment data sheet showing that the parole warrant lodged against petitioner on March 20, 2013 was lifted on September 4, 2015, *id.* Ex. B; (2) a June 4, 2018 panel summary report from a PBPP supervisor, *id.* Ex. C; (3) a report from a July 25, 2018 PBPP hearing, *id.* Ex. D; (4) a warrant issued for petitioner on February 21, 2018 by the PBPP, *id.* Ex. E; and (5) a March 16, 2018 detainer action letter sent from the BOP to the PBPP, *id.* Ex. F. The Government responded to petitioner's Motion on June 29, 2020. Petitioner filed a Reply on July 13, 2020. The Motion is thus ripe for decision.

### III. LEGAL STANDARD

Only three situations warrant granting reconsideration: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court

[issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). The moving party has the burden of establishing one of these grounds. *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011). The grant or denial of reconsideration lies within the discretion of the district court. *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995). The scope of a motion for reconsideration is "extremely limited" and should not be used to relitigate the case. *Blystone*, 664 F.3d at 415. A motion for reconsideration "addresses only factual and legal matters that the Court might have overlooked." *Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993) (internal citation omitted).

**IV.    DISCUSSION**

The central issue in this case is when the PBPP relinquished its primary jurisdiction over petitioner. In his Motion for Reconsideration, petitioner contends that the newly-produced evidence shows that the PBPP relinquished its primary jurisdiction over petitioner on September 4, 2015 by lifting its initial warrant against petitioner. Mot. Recons. 5. Petitioner first cites the recommitment data sheet, which states that the parole warrant arising out of the bank robberies was lodged on March 20, 2013 and lifted on September 4, 2015. *Id.* Petitioner contends that the lifting of the warrant demonstrates that "the PBPP had no intention of maintaining a hold over him under its jurisdiction after that date." *Id.* According to petitioner, this action by the PBPP reflects an "awareness that it could not exercise any legal authority to hold [petitioner] pending the resolution of the outstanding criminal charges past his maximum term of September 11, 2015." *Id.* Petitioner further cites the February 21, 2018 warrant lodged by the PBPP as evidence that the PBPP was "aware it had previously relinquished jurisdiction on September 4, 2015." *Id.* at 6.

5

Petitioner next points to a panel summary report from a PBPP supervisor dated June 4, 2018—after petitioner was transferred back to state custody following his conviction in this Court. *Id.* at 3. The report states that petitioner "owes . . . approximately 2 years, 5 months, and 21 days" and "is available to serve what ever sanction deemed necessary" by the PBPP. *Id.* Ex. C. As petitioner points out, that period of time is roughly equivalent to the period from March 20, 2013—the date of his arrest—through September 11, 2015—the original maximum date for the expiration of petitioner's parole revocation sentence. *Id.* at 3-4. According to petitioner, he "could have only 'owed' that period for PBPP's purposes if he was receiving credit against his federal sentence during that time period." *Id.* at 4.

Finally, petitioner relies on a report from a July 25, 2018 hearing, during which the PBPP considered the sanction for petitioner's parole violation based on the bank robberies. *Id.* Petitioner notes that "the PBPP considered, without objection from the parole agent, arguments made by [petitioner's] counsel that mitigated the severity of his conduct and the need for additional punishment." *Id.* Petitioner argues that, when considered in light of the fact that the PBPP imposed a concurrent sentence on August 15, 2018, the PBPP "acted in a way intended to minimize the amount of time [petitioner] spent in custody." *Id.*

Based on the foregoing evidence, petitioner argues that the state relinquished its primary jurisdiction over him prior to this Court's sentencing on January 25, 2018, and that his sentence was thus required to commence on that day. *Id.* at 7. Instead of immediately beginning his federal sentence and calculating prior custody credit, the BOP improperly delayed the commencement of his sentence from January of 2018 to January of 2019 by sending petitioner back to state custody following his sentencing. As a result, the BOP did not calculate prior custody credit until after he was sentenced by the PBPP and petitioner was therefore "precluded

from receiving consideration for approximately 24 months of presentencing credit" for time spent in custody from September 21, 2013, through September 4, 2015. *Id.* at 7-8.

In response, the Government argues that "it is immaterial that the PBPP lifted the detainer on September 4, 2015 and issued another on February 21, 2018." Resp. Pet'r's Mot. 8. First, the Government argues that the "important fact is that parole violation [for committing the bank robberies while on parole] was pending during that time," and, as a result, "Pennsylvania maintained primary custody over the petitioner until the PBPP adjudicated the violation on August 15, 2018 and completed his sentence in January 2019." *Id.* Second, the Government argues that, even if the state had relinquished its primary jurisdiction on September 4, 2015, petitioner is not entitled to any additional credit towards his federal sentence because the BOP's current calculation credits him for time served from September 5, 2015 to January 24, 2018, and the BOP accepted the Court's recommendation to run petitioner's federal sentence concurrent with the 10 month, 28 day sentence for the parole violation. *Id.* The Government contends that petitioner "fails to explain why he would be entitled to receive federal time credit for [the period from September 21, 2013, through September 4, 2015] simply because the PBPP lifted the detainer on September 4, 2015." *Id.* at 9. The Court disagrees with the Government on both of these issues.

The primary jurisdiction or primary custody doctrine[3] provides that "the first sovereign to arrest the defendant is entitled to have the defendant serve that sovereign's sentence before one imposed by another sovereign." *Taccetta v. Fed. Bureau of Prisons*, 606 F. App'x 661, 663 (3d Cir. 2015). The Third Circuit has explained that, "[g]enerally, a sovereign can only relinquish

---

[3] In his Motion for Reconsideration, petitioner refers to "primary jurisdiction," while the Government refers to "primary custody" in its Response. *See* Mot. Recons. 5; Resp. Mot. Recons. 3. Courts use both terms interchangeably to refer to the doctrine. *See, e.g.*, *Cornelius v. Warden, Fort Dix FCI*, 2016 WL 1700536, at *2 (D.N.J. April 28, 2016) (referring to the "primary custody or primary jurisdiction doctrine").

7

primary jurisdiction in one of four ways: (1) release on bail; (2) dismissal of charges; (3) parole; or (4) expiration of sentence." *Davis v. Sniezek*, 403 F. App'x 738, 740 (3d Cir. 2010) (quoting *United States v. Cole*, 416 F.3d 894, 897 (8th Cir. 2005)). However, the Third Circuit has not treated this as an exclusive list and has considered other "factors" to determine whether a state "intended to relinquish its jurisdiction." *Id.* at 741. Accordingly, courts have recognized that when a state lifts the initial parole detainer lodged against a defendant after he is federally indicted, it relinquishes its primary jurisdiction over the defendant. *See United States v. Cook*, Crim. No. 17-0020, 2020 WL 1974924, at *1 (W.D. Pa. April 24, 2020).

Petitioner's new evidence shows that the initial parole warrant covering the bank robberies lodged against petitioner on March 20, 2013, was lifted on September 4, 2015. Mot. Recons. Ex. B. Accordingly, the Court concludes that the state relinquished its primary jurisdiction over petitioner on September 4, 2015. As in *Cook*, the lifting of that warrant roughly coincides with the expiration of the original maximum date of petitioner's parole revocation sentence—September 11, 2015. *See Cook*, 2020 WL 1974924 at *2 (describing that "the first state parole detainer lodged against [the defendant] was lifted and a new state parole detainer permitting Cook's detention beyond the . . . maximum state parole date was issued"). As petitioner persuasively argues, this action by the PBPP reflects that "it could not exercise any legal authority to hold [petitioner] pending the resolution of the outstanding criminal charges past his maximum term of September 11, 2015." Mot. Recons. 5. Once the warrant was lifted, nothing remained pending in petitioner's case before the PBPP. This conclusion is confirmed by the lodging of a second warrant by the PBPP on February 21, 2018, following petitioner's conviction in this Court. Mot. Recons. Ex. E.

The Court further concludes that the BOP's mistake with regard to the relinquishment of

8

the state's primary jurisdiction deprived petitioner of prior custody credit against his federal sentence.  "In calculating the sentence, the BOP determines (1) when the federal sentence commenced, and (2) whether there are any credits to which the prisoner may be entitled." *Nieves v. Scism*, 527 F. App'x 139, 140-41 (3d Cir. 2013) (citing 18 U.S.C. § 3585).  The commencement of the sentence is governed by 18 U.S.C. § 3585(a).  Prior custody credit is governed by 18 U.S.C. § 3585(b), which provides that a "defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . . that has not been credited against another sentence." *See U.S. v. Wilson*, 503 U.S. 329, 337 (1992) ("Congress made clear [in § 3585(b)] that a defendant could not receive a double credit for his detention time.").  Because the state relinquished its primary jurisdiction prior to this Court's sentencing on January 25, 2018, petitioner's federal sentence should have commenced on that date.[4]  *See Chambers v. Holland*, 920 F. Supp. 618, 621 (M.D. Pa. 1996), *aff'd*, 100 F.3d 946 (3d Cir. 1996) ("The federal sentence does not commence until the Attorney General receives the defendant into her custody for service of the federal sentence.").  Further, § 3585(b) "requires the BOP to calculate and award presentence credit at the time the defendant begins to serve the federal sentence." *Campbell v. Zickefoose*, No. 09-5269, 2011 WL 772990, at *6 (D.N.J. Feb. 28, 2011).  Accordingly, the BOP was required to address prior custody credit under 18 U.S.C § 3585(b) as of January 25, 2018.  Reply 4-5.  As of that date, the PBPP had not yet credited petitioner for "backtime" accrued from September 21, 2013 through September 4, 2015.  *Id.* at 5.  As petitioner points out, "[t]he only sentence Mr.

---

[4] The Court notes that this error was not remedied by the BOP accepting this Court's recommendation to run the federal sentence concurrently with the state's 10 month 28 day parole violation sentence.  Though petitioner's sentence now effectively commenced on January 25, 2018, that decision was not made until after the PBPP sentenced him and credited him for backtime accrued from September 21, 2013 through September 4, 2015. Petitioner has thus been denied prior custody credit as a result of the BOP's failure to calculate such credit on January 25, 2018.

Coleman had served at that time was the six-month parole violation imposed by the May 8, 2013 PBPP decision," which expired on September 20, 2013. *Id.* The period from September 21, 2013 through September 4, 2015 was thus available to be credited against his federal sentence without running afoul of the § 3585(b) prohibition on double credit as of January 25, 2018. *Id.*

The Court acknowledges that, because of the BOP's error regarding primary jurisdiction, the period from September 21, 2013 through September 4, 2015, has already been credited by the PBPP against his parole sentence, and the BOP may contend that it is statutorily precluded under 18 U.S.C. § 3585(b) from awarding petitioner credit for that time. However, it is a basic rule of common law that "the government is not permitted to delay the expiration of the sentence . . . by postponing the commencement of the sentence." *Vega v. United States*, 493 F.3d 310, 317 (3d Cir. 2007) (quoting *Dunne v. Keohane*, 14 F.3d 335, 336 (7th Cir. 1994)). In this case, by initially delaying the commencement of petitioner's sentence, the Government erroneously denied him credit for time served that had not yet been credited against any other sentence. Courts have recognized exceptions to § 3585(b)'s prohibition on double credit in similar circumstances where denial of credit would lead to "illogical results." *United States v. Benefield*, 942 F.2d 60, 66 (1st Cir. 1991). For example, in *Cozine v. Crabtree*, the court rejected an interpretation of § 3585(b) that would prevent a defendant from properly receiving prior custody credit when he was erroneously denied that credit after his federal sentencing and a state court subsequently credited him for the relevant pre-sentence period of time. 15 F. Supp. 2d 997, 1023 (D. Or. 1998). While the *Cozine* court ultimately deferred ruling on the issue because it had been rendered moot, it affirmed that "courts have recognized that credit for time served may, in some instances, properly be credited against two sentences that are intended to run concurrently." *Id.*; *see also Taccetta*, 606 F. App'x at 664 (describing exceptions to 18 U.S.C. § 3585(b)'s rule

10

against double-counting).

The newly-produced evidence demonstrates that the PBPP understood that petitioner would receive credit towards his federal sentence for the period from September 21, 2013 through September 4, 2015 and intended its sentence to run concurrently with his federal sentence.  Mot. Recons. 4, 8.  First, the June 4, 2018 report from a PBPP supervisor states that petitioner "owe[d] . . . approximately 2 years, 5 months, and 21 days"—a period of time roughly equivalent to the period from March 20, 2013 through September 11, 2015.  Mot. Recons. Ex. C.  Petitioner contends that this statement reflects an understanding on the part of the PBPP that petitioner had been earning time against his eventual federal sentence during this period.  Mot. Recons. 3-4.  Next, in issuing its sentence, the PBPP considered arguments made by petitioner's counsel that petitioner was a "changed person" and that the PBPP should minimize the impact of his conviction.  Mot. Recons. Ex. D at 2.  When the PBPP eventually sentenced petitioner for the parole violation based on the bank robberies, it imposed a sentence of 10 months and 28 days plus backtime to be served "concurrently."  Resp. § 2241 Pet. Ex. B Attach. 3.  In light of the newly-produced evidence, the Court concludes that the PBPP intended that its sentence run concurrently with the federal sentence—including the period from September 21, 2013 through September 4, 2015.  *See Boston v. Attorney General of the U.S.*, 210 F. App'x 190, 194 (3d Cir. 2016) (explaining that state sentencing judges have authority to direct that a state sentence be concurrent with a federal sentence) (citing *Barden v. Keohane*, 921 F.2d 476, 480-84 (3d Cir. 1990)).

Put simply, petitioner cannot be denied prior custody credit as a result of the BOP's erroneous assessment of primary jurisdiction at the time of his sentencing in this Court.  The Government is "not permitted to delay the expiration of [petitioner's] sentence" by improperly

11

"postponing the commencement" of his sentence and thus denying him pre-sentence credits that were available and should have been considered at the commencement of his sentence on January 25, 2018. *Vega,* 493 F.3d at 317. The Court thus concludes that the BOP must recalculate petitioner's sentence and credit him with time served from September 21, 2013 to September 4, 2015, which was not credited against any other sentence as of January 25, 2018.

V.     **CONCLUSION**

Based on the foregoing, the Court grants petitioner's Motion for Reconsideration and vacates its April 30, 2020 Memorandum and Order to the extent the Memorandum and Order denied petitioner's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241. To the extent the Memorandum and Order dated April 30, 2020 addressed the arguments presented by petitioner under Federal Rule of Criminal Procedure 36 and 18 U.S.C. § 3582(c)(1)(A)(i)—issues not raised in the Motion for Reconsideration—the Memorandum and Order dated April 30, 2020 remain in place and are not vacated. The Court grants petitioner's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 based on the evidence that the BOP incorrectly calculated petitioner's sentence. Accordingly, the Court directs the BOP to recalculate petitioner's sentence in accordance with the facts and applicable law as set forth in this Memorandum. Specifically, the BOP shall award petitioner credit for time served in custody from September 21, 2013 through September 4, 2015 pursuant to 18 U.S.C. § 3585(b).

An appropriate order follows.